# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

**No. ACM 39761 (reh)**

_____

**UNITED STATES**

*Appellee*

**v.**

**Jamal X. WASHINGTON**

First Lieutenant (O-2), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

*Upon Rehearing*

Decided 20 August 2024

_____

*Military Judge*: Christopher M. Schumann (trial); Colin P. Eichenberger (motions on rehearing); Matthew P. Stoffel (rehearing).

*Approved sentence*: Confinement for 9 months, forfeiture of all pay and allowances, and a reprimand. Sentence adjudged on 15 September 2022 by GCM at a rehearing convened at Malmstrom Air Force Base, Montana.

*For Appellant*: Major Matthew L. Blyth, USAF; Major David L. Bosner, USAF;[1] Major M. Dedra Campbell, USAF; Robert Feldmeier, Esquire.

*For Appellee*: Lieutenant Colonel Brian C. Mason, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Major Jessica L. Delaney, USAF; Major Kelsey B. Shust, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, RICHARDSON, and ANNEXSTAD, *Appellate Military Judges*.

Senior Judge RICHARDSON delivered the opinion of the court, in which Senior Judge ANNEXSTAD joined. Chief Judge JOHNSON filed a separate opinion concurring in part and in the judgment.

_____

[1] We granted Major Bosner's request to withdraw as counsel on 5 September 2023.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

RICHARDSON, Senior Judge:

This case comes to us a third time. A general court-martial composed of officer members convicted Appellant, contrary to his pleas, of one specification of abusive sexual contact (Charge I), one specification of conduct unbecoming an officer (Charge II), and five specifications of fraternization (Charge III), in violation of Articles 120, 133, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 933, 934, respectively.[2] *See United States v. Washington*, No. ACM 39761, 2021 CCA LEXIS 379, at *1–2 (A.F. Ct. Crim. App. 30 Jul. 2021) (unpub. op.). The adjudged and approved sentence consisted of a dismissal.

On appeal, a divided three-judge panel of this court reached the following result: the findings of guilty as to Charges I and II and their specifications were affirmed; the findings of guilty as to Specifications 1 through 4 of Charge III were set aside and dismissed with prejudice; and the findings of guilty as to Specification 5 of Charge III and as to Charge III were set aside and Specification 5 of Charge III and Charge III were dismissed without prejudice to the

---

[2] All offenses were preferred and referred to court-martial after 1 January 2019; the offenses subject to a rehearing on sentence were referred to the rehearing after that date. At the rehearing on sentence, the military judge discussed with the counsel which version of the Manual for Courts-Martial to apply. Both the Government and Defense asserted the *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*) should be applied. After a discussion with counsel, consideration of law and policy, and ending a lengthy oral analysis, the military judge concluded as follows:

> [I]t is certainly open to interpretation, but considering these sources together along with the joint position of the parties and the input of the parties on this matter, leads this court to conclude the application of the forum and sentencing rules in place prior to 1 January 2019, as requested by the defense counsel and the government [counsel], should apply and the court will proceed in that manner.

Pertaining to our analyses in this case, we find no significant substantive difference in the Rules for Courts-Martial in the 2016 *MCM* and a later *MCM*, and therefore cite the 2016 *MCM* throughout this opinion. Thus, unless otherwise noted, all references in this opinion to the Uniform Code of Military Justice (UCMJ), Rules for Courts-Martial (R.C.M.), and Military Rules of Evidence (Mil. R. Evid.) are to the 2016 *MCM*. References to the Military Rules of Evidence applied at the sentence rehearing are to the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*).

Government's right to reinstitute court-martial proceedings against Appellant for the same offense. *Id.* at *2–3. The court set aside the sentence and authorized a rehearing as to Specification 5 of Charge III and Charge III, and the sentence. *Id.* Appellant petitioned the United States Court of Appeals for the Armed Forces (CAAF) for a grant of review, which was "denied without prejudice to Appellant's right to raise the matters asserted during the normal course of appellate review." *United States v. Washington*, 82 M.J. 30 (C.A.A.F. 2021) (mem.).

The convening authority determined a rehearing on Specification 5 of Charge III was impractical and dismissed the specification and charge. The convening authority ordered a rehearing on sentence for Charges I and II. At the conclusion of that rehearing on 15 September 2022, a panel of officer members sentenced Appellant to nine months of confinement, forfeiture of all pay and allowances, and a reprimand. Immediately afterwards, Appellant "moved that the [m]ilitary [j]udge issue an instruction directing the [c]onvening [a]uthority to disapprove the sentence to confinement because the sentence to confinement violated Art[icle] 63, UCMJ[, 10 U.S.C. § 863]." After holding a hearing pursuant to Article 39(a), UCMJ, 10 U.S.C. § 839(a), the military judge denied the motion.

On 26 October 2022, Appellant filed with this court a Petition for Extraordinary Relief in the Nature of a Writ of Habeas Corpus or in the Alternative, in the Nature of a Writ of Mandamus. Appellant requested this court direct his immediate release from confinement, or, in the alternative, withhold the authority of the convening authority to approve a sentence to confinement greater than 120 days. Appellant contended the sentence adjudged at his rehearing on sentence is more severe than the sentence adjudged at his court-martial contrary to Article 63, UCMJ, and Rule for Courts-Martial (R.C.M.) 810(d)(1). We denied Appellant's petition. *In re Washington*, Misc. Dkt. No. 2022-14, 2022 CCA LEXIS 747 (A.F. Ct. Crim. App. 28 Dec. 2022) (order). Appellant filed a writ-appeal petition with the CAAF, which was denied on 1 March 2023. *Washington v. United States*, 83 M.J. 257 (C.A.A.F. 2023) (mem.).

Following the rehearing on sentence, Appellant's case was docketed with this court on 22 February 2023. Appellant now raises the following nine issues: (1) whether the military judge erred when he allowed the Government to admit a heavily redacted version of Appellant's testimony from the initial hearing over Appellant's objection; (2) whether the military judge violated the law-of-the-case doctrine when he permitted the Government to admit sexual predisposition evidence as this court defined the term in its previous decision; (3) whether the sentence in this case violated Article 63, UCMJ; (4) whether the staff judge advocate provided the convening authority with incorrect advice on

the sentence; (5) whether the charges were properly referred to the court-martial for rehearing as to sentence; (6) whether the military judge permitted a non-victim to offer a victim impact statement; (7) whether the punitive reprimand is unlawful because it imposes punishment for an offense for which Appellant was neither charged nor convicted; (8) whether the military judge incorrectly calculated the maximum punishment for Charge II, conduct unbecoming an officer; and (9) whether trial defense counsel provided ineffective assistance by preparing a sentencing case under the mistaken impression that confinement was not possible.

We have carefully considered issue (5) and find it does do not require discussion or relief. *See United States v. Guinn*, 81 M.J. 195, 204 (C.A.A.F. 2021) (citing *United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987)).

As to issue (7), the Government concurs with Appellant's request for relief. Specifically, Appellant asks this court to "excise any reference to a sexual assault upon a non-commissioned officer from the [c]onvening [a]uthority's reprimand;" the Government recommends this court "set aside" the portion of the reprimand that reads "and non-commissioned officer." As to issue (9), as described below, we find relief is warranted. For issues (7) and (9), we take appropriate action in our decretal paragraph.

As to issue (4), Appellant requests as relief that we remand for new post-trial processing. We carefully considered this issue and conclude that our action on Appellant's sentence cures possible prejudice.

As to the remaining issues, we find no error that materially prejudiced Appellant's substantial rights.

## I. DISCUSSION

### A. Appellant's Prior Testimony

Appellant contends the military judge erred by allowing the Government to admit a redacted version of Appellant's trial testimony at the sentence rehearing over defense objection. We are not persuaded.

#### 1. Additional Background

In our previous opinion, we considered then rejected Appellant's claim that "the military judge abused his discretion when he struck Appellant's testimony concerning the 'sexual transaction' at issue in the specification of Charge I, [which alleged] abusive sexual contact of CP." *Washington*, unpub. op. at \*72–105. We found "the military judge presented a cogent and proportionate choice to Appellant and did not unlawfully infringe upon Appellant's right to testify in his own defense. Under the circumstances, the military judge did not abuse his discretion in excluding part of Appellant's testimony." *Id.* at \*105.

Before the sentence rehearing, the Government sought to admit a transcript of Appellant's trial testimony, with the portions that were struck at the original trial redacted. The Defense moved in limine to prevent admission of Appellant's trial testimony or, alternatively, to prevent portions being redacted, citing the rule of completeness in Mil. R. Evid. 106, and arguing the redactions result in testimony that is "substantially misleading" because they "exclude all of [Appellant's] testimony that is favorable to him and leave the panel with an incomplete picture of his testimony."[3] Appellant also objected to admission of some of CP's testimony. The Defense argued, as we discuss in Section I.B, *infra*, that Mil. R. Evid. 412 prohibits the Government from introducing prior testimony of CP that would indicate CP's sexual orientation.[4] Applying R.C.M. 810 and Mil. R. Evid. 403, and considering Mil. R. Evid. 412, the military judge rejected Appellant's exclusion and completeness arguments. He found that Appellant's "prior testimony, which the Government intends to offer, is not misleading, no additional portions of testimony ought in fairness be considered, and exclusion of the prior testimony as a whole is not warranted," adding that "neither side may introduce any portion of [Appellant's] testimony which was properly excluded in the original trial." The military judge did not find that any portions were improperly excluded in the original trial.

At the sentence rehearing, before the new military judge, the Defense moved for reconsideration, still arguing that Mil. R. Evid. 412 requires the exclusion of portions of CP's prior testimony. In its motion, the Defense also cited the rule of completeness in Mil. R. Evid. 304(h), which they argued would require "admission of the entirety of [Appellant's] admission, irrespective of any fairness consideration." They further argued Appellant "is entitled [to] the exclusion of his entire testimony at the initial hearing because the entirety of it cannot be admitted." Citing to *United States v. Schelmetty*, No. ARMY 20150488, 2017 CCA LEXIS 445, at *13–14 (A. Ct. Crim. App. 30 Jun. 2017) (mem.), the Defense continued, arguing that "[w]here Mil. R. Evid. 412 prohib-

---

[3] Appellant cited *United States v. Schelmetty*, No. ARMY 20150488, 2017 CCA LEXIS 445, at *13 (A. Ct. Crim. App. 30 Jun. 2017) (mem.) ("[I]f the exclusion of Mil. R. Evid. 412 evidence has made the statement such that its probative force is substantially outweighed by the danger of unfair prejudice, the statement should be excluded under Mil. R. Evid. 403.").

[4] The military judge ruled that portions not related to the offenses of which Appellant was convicted would be redacted, thereby granting the defense motion in part.

its introduction of portions of an admission or confession, the Defense may exclude the entirety of the admission."[5] In argument to the military judge, the Defense stated their requested relief, in preferred order, was admission of Appellant's entire trial testimony, exclusion of the entirety of his testimony, or exclusion of his testimony "with respect to [CP]."

The military judge denied the defense motion to reconsider. He adopted the essential findings of fact, the conclusions of law, and the analysis from the court's original ruling. He added several more conclusions, including that Mil. R. Evid. 412 did not apply to Appellant's "nonconsensual touching [of CP] that occurred imminently before the offense of which [Appellant] stands convicted." Additionally, he found that "[i]n the context of the testimony presented at the prior trial, it was properly admitted as evidence that [CP] did not consent, and manifested that lack of consent to [Appellant]." Further, he found the redactions were appropriate in that on appeal this court concluded those portions were "properly determined to be matters inappropriate for consideration [by] the fact finder." *See Washington*, unpub. op. at \*103–04. Finally, he conducted a balancing test under Mil. R. Evid. 403, finding Appellant's testimony as redacted "remains to be of high probative value as it is directly related to the offenses that are the subject of this rehearing," and the "danger of unfair prejudice by presenting [Appellant's] testimony with the redactions is low, as it is not misleading with respect to the offenses to which [Appellant] stands convicted," "does not confuse the issues by presenting the testimony in a redacted form, and it will not create an unfair advantage for either side." Appellant alleges error in the ruling on reconsideration and resulting admission of the redacted testimony.

**2. Law**

We review a military judge's evidentiary ruling to exclude or require completion of a statement for an abuse of discretion. *United States v. Rosales*, 74 M.J. 702, 705 (A.F. Ct. Crim. App. 2015) (citations omitted). A military judge abuses his or her discretion when the military judge's "findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." *United States v. White*, 80 M.J. 322, 327 (C.A.A.F. 2020) (quoting *United States v. Miller*, 66 M.J. 306, 307 (C.A.A.F. 2008)). "The abuse of discretion standard is a

---

[5] The Defense asserted in argument to the military judge, "[Mil. R. Evid.] 412 doesn't trump [Mil. R. Evid.] 304(h)," yet the court in *Schelmetty* stated: "It seems clear to us that Mil. R. Evid. 412 trumps Mil. R. Evid. 106 and 304(h)(2). That is, if a statement would be admissible under [Mil. R. Evid.] 304(h)(2), but is inadmissible under [Mil. R. Evid.] 412, it remains inadmissible." *Schelmetty*, unpub. op. at \*12.

strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable, or clearly erroneous.'" *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010) (quoting *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010)).

At a rehearing on sentence, "[t]he contents of the record of the original trial consisting of evidence properly admitted on the merits relating to each offense of which the accused stands convicted but not sentenced may be established by any party . . . ." R.C.M. 810(a)(2)(A); *see also United States v. Sills*, 61 M.J. 771, 773 (A.F. Ct. Crim. App. 2005) (quoting the Discussion to R.C.M. 810(a)(2)(A) which "precludes the admission on sentence rehearing of 'matters excluded from the record of the original trial on the merits or improperly admitted on the merits'").

"If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statements—that in fairness ought to be considered at the same time." Mil. R. Evid. 106. "If only part of an alleged admission or confession is introduced against the accused, the defense, by cross-examination or otherwise, may introduce the remaining portions of the statement." Mil. R. Evid. 304(h). "The rule of completeness is an evidentiary rule designed to promote fairness by precluding unfair omissions, not a rule intended to allow an accused to avoid the 'crucible of cross-examination.'" *United States v. Rodriguez*, 56 M.J. 336, 342–43 (C.A.A.F. 2002) (quoting *United States v. Stark*, 24 M.J. 381, 385 (C.M.A. 1987)) (additional citation omitted); *see also United States v. Benson*, 48 M.J. 734, 740 (A.F. Ct. Crim. App. 1998) (stating the policy behind both rules of completeness is fairness (citation omitted)).

Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence." Mil. R. Evid. 403. "Military judges receive wide discretion in conducting balancing under [Mil. R. Evid.] 403, but military judges' rulings receive less deference if they fail to articulate their analysis on the record." *United States v. St. Jean*, 83 M.J. 109, 113 (C.A.A.F. 2023) (citing *United States v. Collier*, 67 M.J. 347, 353 (C.A.A.F. 2009)).

### 3. Analysis

We find the military judge did not abuse his discretion in finding neither rule of completeness required Appellant's prior testimony to be admitted in whole, excluded in whole, or excluded with respect to CP. In section I.B, *infra*, we consider Appellant's arguments relating to Mil. R. Evid. 412.

Appellant contends the military judge should not have applied Mil. R. Evid. 403, arguing Mil. R. Evid. 304(h) requires admission, regardless of fairness.

We disagree. While "fairness" is a stated component in the text of Mil. R. Evid. 106 and not Mil. R. Evid. 304(h), the absence of "fairness" from the latter rule does not make Mil. R. Evid. 403 inapplicable.[6] "The rule of completeness connects with [Mil. R. Evid.] 403 of the [Federal] Rules of Evidence." *United States v. Lopez-Medina*, 596 F.3d 716, 736 (10th Cir. 2010) (citing Christopher B. Mueller & Laird C. Kirkpatrick, FEDERAL EVIDENCE § 1:42 (3d ed. 2007)) (applying Fed. R. Evid. 106).

Next, Appellant asserts error in the military judge's application of Mil. R. Evid. 403 in his ruling upon reconsideration. Appellant contends the danger of misleading the members was high: "[T]he version of Appellant's testimony which the panel received was both shorn of its exculpatory components and its context. This both excluded matters in mitigation and made Appellant appear unbelievable before the panel because his denial of the charged incident was less credible in the absence of that context." Appellant, however, does not specifically identify which parts of Appellant's testimony were presented out of context and unfairly made his testimony appear less credible.[7] We find the military judge appropriately applied Mil. R. Evid. 403 and we find no abuse of discretion in the admission of Appellant's redacted trial testimony at the sentence rehearing.

## B. Sexual-Orientation Evidence

Appellant asserts the military judge erred by allowing previous testimony from CP wherein he stated he "was not into anything like that." He argues "anything like that" referenced homosexual activity, and by stating he was not "into" that, he implicated his heterosexuality. Summarizing our prior opinion, *Washington*, unpub. op. at *98–100, Appellant asserts "physical acts and statements which tend to indicate sexual orientation are evidence of sexual predisposition." He continues, "The [m]ilitary [j]udge therefore erred when he permitted the [G]overnment to introduce evidence which implicated [CP's] sexual orientation because this evidence was predisposition evidence under the law of the case and only Appellant could admit it." We find the military judge did not err.

---

[6] Indeed, Appellant's arguments imply unfairness in that, at the sentence rehearing, he was not able to start with a clean slate after his failure at trial to comply with Mil. R. Evid. 412, which resulted in the striking of parts of his testimony that he asserts were exculpatory or extenuating. *See Washington*, unpub. op. at *105.

[7] Similarly, outside the portions that were stricken at trial, Appellant does not identify what matters in mitigation were excluded.

### 1. Additional Background

This court previously considered sexual-orientation evidence raised in Appellant's testimony that the military judge ultimately struck. *See Washington*, unpub. op. at *91–106. In part, we found:

> The inference from [the Defense's] line of questioning was clear: CP consented to the conduct in Appellant's hotel room because he was either gay or bisexual, which plainly put the burden on Appellant as the source and proponent of "evidence of specific instances of sexual behavior by the alleged victim . . . *offered by the accused* to prove consent. . . ." We conclude the military judge did not abuse his discretion in finding that Appellant's testimony implicated Mil. R. Evid. 412.
>
> . . . .
>
> The rule plainly embraces an alleged victim's sexual predisposition, Mil. R. Evid. 412(a), which is defined to mean "an alleged victim's . . . lifestyle that does not directly refer to sexual activities or thoughts but that may have a sexual connotation for the factfinder."
>
> . . . .
>
> Because Appellant's testimony about CP's sexual predisposition plainly implicates [Mil. R. Evid. 412], we need not decide whether the military judge erred in finding that Appellant's account of mutually consensual [acts involving CP] are similarly within its reach.

*Id.* at *98–99 (first, second, third, and fifth ellipses in original) (quoting Mil. R. Evid. 412(b)(1)(B); Mil. R. Evid. 412(d)) (additional citation omitted).

At Appellant's sentence rehearing, the Defense objected to the Government offering CP's trial testimony relating to CP's sexual orientation. Specifically at issue was the emphasized portion of this exchange between trial counsel and CP:

> Q. After [Appellant touched you] the first time, what happened?
>
> A. I remember we had a conversation. I remember talking to him afterwards telling him sorry. *I'm not into you. I'm not into that or anything like that.* I can't remember what else we talked about, but I know the incident happened again.
>
> Q. Tell me about how it happened again.
>
> A. It was the same situation where [Appellant] stepped over, kissed me on the lips and put his hand down again.

The Defense argued this court found the emphasized statement to be a statement of sexual predisposition, but that finding was "at variance with the text of the rule." The Government argued this was "not a statement of sexual predisposition" but "an assertion of heterosexuality."

The military judge ruled, in part:

> The testimony of [CP] regarding nonconsensual touching that occurred imminently before the offense of which [Appellant] stands convicted does not implicate the general inadmissibility of sexual behavior of -- or sexual predisposition evidence found in [Mil. R. Evid.] 412.
>
> . . . .
>
> Regarding [CP's] statement that, "I'm not into you, I'm not into that or anything like that," the connotation of that statement is somewhat ambiguous. It can be interpreted that the statement is a manifestation of a lack of consent. Or, it could be interpreted that [CP] is heterosexual.
>
> In the context of the testimony presented at the prior trial, it was properly admitted as evidence that [CP] did not consent, and manifested that lack of consent to [Appellant].[8]

### 2. Law

"When a party does not appeal a ruling, the ruling of the lower court normally becomes the law of the case." *United States v. Parker*, 62 M.J. 459, 464 (C.A.A.F. 2006) (citation omitted). "The law-of-the-case doctrine, however, is a matter of appellate policy, not a binding legal doctrine." *Id.*

"We review a military judge's decision to admit evidence for an abuse of discretion." *United States v. Knarr*, 80 M.J. 522, 534 (A.F. Ct. Crim. App. 2017) (citation omitted).

Under Mil. R. Evid. 412, evidence of an alleged victim's sexual predisposition and evidence that an alleged victim engaged in other sexual behavior is generally inadmissible. Mil. R. Evid. 412(a). "'Sexual behavior' includes any sexual behavior not encompassed by the alleged offense," and "'sexual predisposition' refers to an alleged victim's mode of dress, speech, or lifestyle that

---

[8] The military judge added that it would be improper for counsel to argue that CP did not consent because he was heterosexual, or to argue that CP's sexual predisposition is a matter in aggravation, *i.e.*, that Appellant's "crime is worse because [CP] is heterosexual."

does not directly refer to sexual activities or thoughts but that may have a sexual connotation for the factfinder." Mil. R. Evid. 412(d).

### 3. Analysis

Appellant misinterprets our language and conclusions in *Washington*. This court did not hold that evidence which happens to indicate a victim's heterosexuality, homosexuality, or any other sexual orientation is inadmissible under Mil. R. Evid. 412 either generally or in Appellant's case specifically. Thus, it was not the "law of the case."

In that opinion, this court held that "the military judge did not abuse his discretion in finding that Appellant's testimony [about CP] implicated Mil. R. Evid. 412." *Washington*, unpub. op. at \*98. We found a basis in Mil. R. Evid. 412, specifically "sexual predisposition," to support the military judge's conclusion that Appellant offered sexual behavior of CP to prove consent without following the procedural requirements of that rule. *Id.* at \*93–99. We find the military judge at the sentence rehearing did not violate the law-of-the-case doctrine.

The military judge at the sentence rehearing found CP's statement was a manifestation of CP's lack of consent to Appellant's conduct. We previously stated that "the question of whether and under what circumstances an alleged victim's sexual behavior may be 'res gestae' was not properly before the military judge, and is unnecessary to answer here assuming it is properly before this court now." *Id.* at \*100 (footnote omitted). Thus, we made no law of the case on this issue. We find the military judge did not abuse his discretion in admitting this portion of CP's trial testimony into evidence.

## C. Victim-Impact Statement

Appellant contends JA "was not a victim within the meaning of R.C.M. 1001A because the Charge and Specification of Article 133, UCMJ[,] at issue here was victimless."

### 1. Additional Background

Appellant was found guilty of a specification and charge in violation of Article 133, UCMJ, which alleged he "did, at or near Casper, Wyoming, on divers occasions on or about 23 September 2017, wrongfully and dishonorably touch [JA's] genitals through the clothing, which under the circumstances constituted conduct unbecoming an officer and a gentleman."

At the rehearing, the Defense filed a motion in limine to exclude any victim impact statement from JA. Both the Government and JA's special victims' counsel responded, opposing the motion. Appellant raised substantially the same arguments as he has on appeal, there arguing the "touching itself wasn't

the crime. The crime charged, the crime proven, was that [Appellant] dishonored himself, and [JA] can't be a victim of that," and here asserting the "charged offense . . . involves Appellant harming his own honor and standing. It does not involve Appellant harming the honor, standing or person of [JA]."

After hearing argument from counsel, the military judge issued an oral ruling. He summarized this court's description of the facts in our previous opinion:

> [Appellant] grabbed [JA's] penis and or his genitals through [JA's] clothing. The acts occurred during the course of a single evening. At the time of the offenses, [Appellant] was [JA's] flight commander. In general, the contact occurred during an exchange between [Appellant] and [JA] wherein [Appellant] was challenging [JA] about whether he would engage in sexual activity later that evening with any of the females he had met in the bar that night.

The military judge explained the caselaw he found most persuasive, including cases relating to victims of possession of child pornography images and from family members of victims. He also found instructive a case where it was not error for victims of offenses of recruiter misconduct charged under Article 92, UCMJ, to provide unsworn impact statements. *See United States v. Da Silva*, No. ACM 39599, 2020 CCA LEXIS 213, at *49–50 (A.F. Ct. Crim. App. 25 Jun. 2020) (unpub. op.). The military judge then found:

> In this case, the court finds that [JA] meets the definition of a crime victim and may provide a victim impact statement under Rule for Court[s]-Martial 1001(c) if he so desires. [JA] suffered direct physical harm as a result of [Appellant's] commission of the charged offense by virtue of the wrongful physical contact he was subjected to at the hands of [Appellant].

Later during the rehearing, JA offered a victim impact statement. The Defense objected to portions. After the military judge sustained or overruled the various objections,[9] a revised statement was presented and entered as Court Exhibit A. JA read, and the members were provided a copy of, Court Exhibit A. His statement focused on Appellant's and JA's ranks and positions, and the loss of trust and respect following the offense. JA wrote how he felt when he began to understand he was a victim: "Disgusted and sickened when I realized that our leader, role model and mentor all along had taken advantage of me."

---

[9] Appellant does not challenge the military judge's rulings on these objections.

**2. Law**

"A crime victim of an offense of which the accused has been found guilty has the right to be reasonably heard at a sentencing hearing relating to that offense." R.C.M. 1001A(a). "For purposes of this rule, a 'crime victim' is an individual who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of an offense of which the accused was found guilty." R.C.M. 1001A(b)(1). Also under this rule, "'victim impact' includes any financial, social, psychological, or medical impact on the victim directly relating to or arising from the offense of which the accused has been found guilty." R.C.M. 1001A(b)(2).

Interpretation of R.C.M. 1001A is a question of law we review de novo. *See United States v. Cunningham*, 83 M.J. 367, 371 (C.A.A.F. 2023) (footnote omitted) (citing *United States v. Edwards*, 82 M.J. 239, 243 (C.A.A.F. 2022)), *cert. denied*, 144 S. Ct. 1096 (2024). "However, we review a military judge's decision to accept a victim impact statement offered pursuant to R.C.M. 1001A for an abuse of discretion." *Id.* If we find error, we test for prejudice, specifically "whether the error substantially influenced the adjudged sentence.'" *Edwards*, 82 M.J. at 246 (quoting *United States v. Barker*, 77 M.J. 377, 384 (C.A.A.F. 2018)).

**3. Analysis**

Interpreting R.C.M. 1001A, and its current counterpart R.C.M. 1001(c), de novo, and considering whether the military judge's application of the law was an abuse of discretion, we find no error in the military judge's determination that JA was a victim under those rules. The military judge found "[JA] suffered direct physical harm as a result of [Appellant's] commission of the charged offense by virtue of the wrongful physical contact he was subjected to at the hands of [Appellant]."

We also find no abuse of discretion in allowing Court Exhibit A to be admitted and read to the members. In that unsworn statement, JA described social and psychological harm he suffered arising from Appellant's crime. Finding no error, we do not determine prejudice.

**D. Maximum Punishment**

Appellant claims the military judge erred when he determined Appellant's conduct in violation of Article 133, UCMJ, was analogous to assault consummated by a battery, then calculated the maximum punishment for that offense accordingly. As he did at trial, Appellant asserts the military judge should have considered disorderly conduct in violation of Article 134, UCMJ, as the most analogous offense.

### 1. Additional Background

As stated in Section I.C, *supra*, Appellant was found guilty of a specification and charge in violation of Article 133, UCMJ, which alleged he "did, at or near Casper, Wyoming, on divers occasions on or about 23 September 2017, wrongfully and dishonorably touch [JA's] genitals through the clothing, which under the circumstances constituted conduct unbecoming an officer and a gentleman."

At Appellant's original trial, the military judge determined the maximum punishment for this offense based on assault consummated by a battery being the most analogous offense.[10] At Appellant's sentence rehearing, trial defense counsel agreed with that fact, and agreed that issue was not challenged or overturned on appeal. However, Appellant cited *United States v. Booker*, 543 U.S. 220 (2005), arguing it required that "whenever there is to be an escalation in the maximum sentence, the facts that give rise to that escalation must be presented to the finder of fact to prove beyond a reasonable doubt . . . ." He argued the elements of assault consummated by a battery were not so proved.

After hearing argument from counsel, the military judge ruled orally. He found, *inter alia*:

> Based on the information provided, it is clear to this court that the gravamen of [Appellant's] conduct which the charged [Article] 133[, UCMJ] offense sought to address was his wrongful physical contact with [JA]. Wrongful, the court would note, includes an act done without legal justification or excuse, and certainly consent would be a legal justification or excuse for engaging in that particular physical contact.

### 2. Law

"The maximum punishment authorized for an offense is a question of law, which we review *de novo*." *United States v. Beaty*, 70 M.J. 39, 41 (C.A.A.F. 2011) (citations omitted).

The maximum punishment for a violation of Article 133, UCMJ, is: "Dismissal, forfeiture of all pay and allowances, and confinement for a period not in excess of that authorized for the most analogous offense for which a punishment is prescribed in this Manual, or, if none is prescribed, for 1 year." *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*), pt. IV, ¶ 59.e.

The elements of assault consummated by a battery, in violation of Article 128, UCMJ, were: "(a) [t]hat the accused did bodily harm to a certain person;

---

[10] The military judge made this determination upon suggestion by Appellant's civilian trial defense counsel, with no objection from the Government.

and (b) [t]hat the bodily harm was done with unlawful force or violence." *Id.* at ¶¶ 54.b.(2)(a), (b). A "battery" is an assault in which bodily harm in inflicted, without legal justification or excuse, and without the consent of the person affected. *Id.* at ¶¶ 54.c.(1)(a), (2)(a). "'Bodily harm' means any offensive touching of another, however slight." *Id.* at ¶ 54.c.(1)(a). The maximum confinement authorized for assault consummated by a battery is six months. *Id.* at ¶ 54.e.(2).

The elements of disorderly conduct, in violation of Article 134, UCMJ, were: (1) that the accused was disorderly, and (2) that, under the circumstances, the accused's conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces. *See id.* at ¶¶ 73.b.(1), (2).

> Disorderly conduct is conduct of such a nature as to affect the peace and quiet of persons who may witness it and who may be disturbed or provoked to resentment thereby. It includes conduct that endangers public morals or outrages public decency and any disturbance of a contentious or turbulent character.

*Id.* at ¶ 73.c.(2). The maximum confinement authorized for disorderly conduct proven to be "[u]nder such circumstances as to bring discredit upon the military service" is four months, and in other cases is one month. *Id.* at ¶¶ 73.e.(1)(a), (b).

### 3. Analysis

We find Appellant's reliance on *Booker* misplaced. Similar to military jurisprudence, *Booker* requires sentence enhancements or aggravating factors to be proven beyond a reasonable doubt to justify an increase in the maximum punishment. *See, e.g.*, *United States v. Harris*, 45 C.M.R. 364, 367 (C.M.A. 1972) (considering the sentence enhancement for lengthy absences from authority "an aggravating circumstance [which] must be both alleged and established beyond a reasonable doubt" (citation omitted)); *United States v. Truss*, 70 M.J. 545, 547 (A. Ct. Crim. App. 2011) ("[S]entence aggravators properly promulgated by the President [under Article 56, UCMJ] . . . must be pled and proven beyond a reasonable doubt to enable the enhanced maximum sentence potential but are not necessary to obtain a conviction for the underlying offense." (citations omitted)). Indeed, disorderly conduct is subject to a higher maximum punishment when "conduct of a nature to bring discredit upon the armed forces" is alleged in the specification and proved. *See* 2016 *MCM*, pt. IV, ¶ 73.c.(3). Here, no sentence enhancement or aggravating factor was alleged to increase Appellant's maximum punishment.

We have compared the elements of the specification of which Appellant was convicted and the elements of closely related offenses to determine whether there is a "most analogous offense." Every Article 133, UCMJ, offense has the

element of conduct unbecoming an officer; therefore, we focus more on the other elements of the convicted offense. Appellant "wrongfully and dishonorably touch[ed JA's] genitals through the clothing on divers occasions." We find the gravamen of the offense is the wrongful touching of another person. A battery requires a wrongful touching; disorderly conduct does not. The military judge did not err in determining assault consummated by a battery was the most analogous. Under the circumstances of this case, we find the maximum sentence to confinement for the Specification of Charge II was six months.[11]

### E. Article 63, UCMJ

Appellant asserts the sentence imposed at the rehearing was both "in excess of" and "more severe than" the sentence imposed at his general court-martial, and therefore violated Article 63, UCMJ. For the reasons explained below, we disagree.

#### 1. Additional Background

In his unsworn statement to the members, Appellant made no direct reference to any particular form of punishment. However, Appellant implied in the following excerpts from his statement that he did not want them to sentence him to the lifelong effects of a punitive discharge:

> I want to say a few words prior [to you] deciding my future and fate that may have *lifelong effects* on me.
>
> . . . .
>
> . . . As a result of my actions, I am standing before you pleading for leniency and asking you to please not allow the charges from this one night of unprofessional behavior to *ruin my life forever*.
>
> . . . .
>
> I know that my Air Force career is over regardless of your decision. I know that regardless of your decision I will almost certainly have these convictions for the rest of my life. I stand here and take full accountability for the errors in judgment that [I] made on that fateful night. I ask only that you see me as a man that has flaws, not as a hardened criminal. And, that you give me a *chance to become a contributing member of society*. . . .

---

[11] We also considered whether indecent conduct under Article 134, UCMJ, is most analogous. However, its maximum confinement of five years is more than Appellant faced at his original court-martial for this offense based on the military judge's calculation of and instruction on the maximum punishment. It would be inappropriate for his punitive exposure to increase upon rehearing.

(Emphasis added).

The Government argued for a sentence consisting solely of a dismissal.

Appellant's civilian defense counsel referred back to Appellant's unsworn statement, and argued against a dismissal:

> [T]he sentence that the Government requests is far too severe for the misconduct in the charges.
>
> . . . .
>
> . . . Now, my client fully acknowledges that his conduct on that one night more than five years ago was not professional and is worthy of some punishment. He told you yesterday that he understands that his time in the Air Force is over.
>
> . . . .
>
> . . . You do not need to impose a dismissal to separate him from the Air Force, he will be gone irrespective because he has a conviction. The question for you, is not whether or not my client will stay in the Air Force, he won't. The question for you, is whether or not a dismissal, the infamy and the black name, the black mark, which will be against his name for the rest of his life, is appropriate for his crimes. And I would [Indiscernible word] you that it is not. . . .
>
> . . . As a civilian he'll go out, he'll get a job, [he] will contribute to society, but if you give him that dismissal he will not be able to rehabilitate.

(Second alteration in original). Civilian defense counsel also argued a reprimand is "absolutely appropriate," that some forfeiture of pay "is an appropriate punishment," and "[s]hould you wish to impose restriction or even at the upper limit, a short-term to confinement, that is appropriate at the upper cusp."

The military judge provided the members instructions on sentencing. Included were instructions that the maximum term of confinement was seven years and six months, and that "[a] punitive discharge will affect an accused's future with regard to his legal rights, economic opportunities, and social acceptability." The members sentenced Appellant to nine months' confinement, forfeiture of all pay and allowances, and a reprimand, and did not include a dismissal—very much in line with the civilian defense counsel's argument.

In his request for clemency, Appellant requested the convening authority "please not approve [the adjudged] sentence, or at a minimum only approve that portion which is not in excess or more severe than [his] previous sentence." He explained why confinement will "caus[e] significant hardship and burden"

on him and his family, and "will severely impact [his] rehabilitative potential." He ended, "pleading that [the convening authority] prevent [him] from facing the remainder of this excessive and severe sentence." Appellant did not state he believed at the rehearing that the convening authority could not approve a sentence to confinement, or that he would have preferred a sentence to a dismissal over confinement.

In his declaration to this court, Appellant stated, "I would 100[ percent] have preferred a dismissal for my sentence than what the members adjudged at the rehearing."[12]

**2. Law**

Article 63, UCMJ (2016 *MCM*), provides that "[u]pon a rehearing . . . no sentence in excess of or more severe than the original sentence may be approved." As a general rule, "offenses on which a rehearing . . . has been ordered shall not be the basis for an approved sentence in excess of or more severe than the sentence ultimately approved by the convening or higher authority following the previous trial or rehearing." R.C.M. 810(d)(1). "In adjudging a sentence not in excess of or more severe than one imposed previously, a court-martial is not limited to adjudging the same or a lesser amount of the same type of punishment formerly adjudged." *United States v. Turner*, 34 M.J. 1123, 1125 (A.F.C.M.R. 1992) (quoting R.C.M. 810(d), Discussion (*Manual for Courts-Martial, United States* (1984 ed.))). In *Turner*, our predecessor court cured instructional error—omitting confinement as an option at a rehearing when the appellant's original sentence included a bad-conduct discharge but no confinement—by not approving the bad-conduct discharge and reduction to the grade of E-3 adjudged at the rehearing and instead affirming six months' confinement and reduction to E-4. *Id.* at 1126–27.

The CAAF's "opinions interpreting the relationship between discharges and other forms of punishment with respect to other areas of law . . . are instructive but not conclusive in the application of Article 63[, UCMJ]." *United States v. Altier*, 71 M.J. 427, 428 (C.A.A.F. 2012) (per curiam) (citation omitted). The Government cites several cases in which some amount of confinement was deemed less severe than a bad-conduct discharge, either in an Article 60[13] or Article 63, UCMJ, context. These cases include *United States v. Carter*, 45 M.J. 168, 170 (C.A.A.F. 1996) (convening authority commuting bad-conduct discharge to 24 months' confinement); *Turner*, 34 M.J. at 1126–27 (court af-

---

[12] See Section I.G.1.g, *infra*, for additional details relating to Appellant's declaration.

[13] Previous versions of Article 60, UCMJ, gave the convening authority wide authority to commute the sentence of a court-martial in whole or in part.

firming six months' confinement and reduction to E-4, when sentence at rehearing included bad-conduct discharge, reduction to E-3, and no confinement); and *Altier*, 71 M.J. at 428 (court affirming rehearing sentence to 30 days' confinement plus other components when bad-conduct discharge was original sentence). Almost 50 years ago, our predecessor court stated in a convening authority-commutation case, "[W]e believe that confinement at hard labor for 12 months is a less severe punishment than a bad[-]conduct discharge." *United States v. Carrier*, 50 C.M.R. 135, 138 (A.F.C.M.R. 1975) (citation omitted).

The CAAF has found punitive discharges are "qualitatively different from confinement and other punishments such as forfeitures" and "there is no readily measurable equivalence available to make meaningful conversions" of punitive separations and confinement. *United States v. Mitchell*, 58 M.J. 446, 448 (C.A.A.F. 2003) (footnote, internal quotations, and citations omitted). In *Mitchell*, the CAAF considered whether the lower court erred by affirming a sentence upon rehearing to a dishonorable discharge, confinement for six years, and reduction to the grade of E-1 when the appellant's original sentence included a bad-conduct discharge, confinement for ten years, total forfeitures, and reduction to the grade of E-1. 58 M.J. at 447 (citing Article 63, UCMJ).

> In applying Article 63[, UCMJ,] to [the a]ppellant's sentence the Court of Criminal Appeals [(CCA)] adopted an "objective test" and asked whether a reasonable person would conclude that the sentence was "in excess of or more severe" than its predecessor. The court answered: "We cannot imagine any reasonable soldier desiring to spend four more years in confinement in order to avoid the increased severity of a dishonorable discharge over a bad-conduct discharge." While this statement might well be factually correct, it misses the legal point. One might logically choose the lesser amount of confinement between two options, but that does not necessarily mean, as a matter of military law, that the "increased severity of a dishonorable discharge" does not make the latter sentence "in excess of or more severe" than the former sentence.

*Id.* at 447–48 (quoting *United States v. Mitchell*, 56 M.J. 936, 942 (A. Ct. Crim. App. 2002)). The CAAF then found, "it is not possible in this case to make a meaningful comparison, objectively or otherwise, between the increased severity of [the a]ppellant's discharge and the decreased severity of his confinement and forfeitures." *Id.* at 448. It continued:

> While the term of confinement is finite, the effects of the increased stigma of a dishonorable discharge may linger long after

one has been released from confinement.[14] It remains unclear how an appellate court in such a case can apply an objective standard. In our view, it cannot be known what effects a particular punitive discharge will have on a particular accused. These effects will no doubt differ between individuals based on their personal circumstances. Indeed, a youthful offender might very well perceive he has benefited by less confinement, but a more severe discharge, only to learn in his more mature years of the potentially socially debilitating effects of dishonorable separation from the service.

*Id*. at 448–49. The CAAF did not affirm the dishonorable discharge or forfeitures; it affirmed only a bad-conduct discharge, confinement for six years, and reduction to the grade of E-1. *Id*. at 449. The CAAF's holding related only to punitive discharges: "[F]or the purposes of Article 63, [UCMJ,] a dishonorable discharge is more severe than a bad-conduct discharge." *Id*. The CAAF later explained that it "held in *Mitchell* that the increase in *severity* of the discharge at the rehearing, from a bad-conduct discharge to a dishonorable discharge, could not be offset by a decrease in *severity* of the confinement and forfeitures at the rehearing." *Altier*, 71 M.J. at 428 (emphasis added) (citing *Mitchell*, 58 M.J. at 449).

The CAAF's predecessor court stated:

[I]n comparing two different species of punishment, it is not always apparent which is the more or the less "severe." We have, however, generally acknowledged that a punitive discharge may lawfully be commuted to some period of confinement.

*Waller v. Swift*, 30 M.J. 139, 143 (C.M.A. 1990) (quoting *United States v. Hodges*, 22 M.J. 260, 262 (C.M.A. 1986)) (additional citation omitted). "[A] determination of the relative severity of a sentence requires more than superficial consideration." *Id*. at 144 (citing *United States v. Hannan*, 17 M.J. 115

---

[14] Over 35 years before *Mitchell*, the United States Court of Military Appeals described the severity of a punitive discharge in *United States v. Wheeler*, 38 C.M.R. 72, 74 (C.M.A. 1967):

[T]he ordering of a punitive discharge so characterizes an individual that his whole future is utterly destroyed. He is marked far beyond the civilian felon, hampered as he may be by the sneering term "ex-con," for, justifiedly or not, the punitive discharge so dishonors and disgraces an accused that he finds employment virtually impossible; is subjected to many legal deprivations; and is regarded with horror by his fellow citizens. Truly, it has come to be the modern equivalent of the ancient practice of branding felons, and the stain it leaves is as ineradicable.

(C.M.A. 1984)). In *Waller*, the United States Court of Military Appeals (CMA) found that commutation of a bad-conduct discharge to 12 months' confinement, when the appellant had specifically requested a punitive discharge without confinement as part of his sentence, was improper. *Id.* at 140, 144–45. In the appellant's unsworn statement and in his counsel's argument to the court members, the appellant requested a punitive discharge and no confinement. *Id.* at 140. The staff judge advocate (SJA) recommended the convening authority commute the adjudged bad-conduct discharge to 12 months' confinement, so the appellant could separate at the end of his term of service with a discharge under honorable conditions. *Id.* The appellant's defense counsel responded, urging the convening authority to disapprove the SJA's recommendation, adding:

> As is evident from the arguments made by both sides at sentencing, confinement was viewed as a more severe punishment. . . . The sentence reached by the court-members demonstrates that they sided with the Defense and that the *lesser* sentence of a punitive discharge should be adjudged instead of confinement. For the Government to now assert that this punitive discharge is a more severe punishment than confinement totally ignores the arguments offered at sentencing and the sentence adjudicated.

*Id.* at 141 (ellipsis in original). The CMA appeared to agree:

> Obviously, [the appellant] and his lawyer did not view the 12 months' confinement as being a "lesser" punishment than the bad-conduct discharge. Moreover, from our examination of the record of trial, it seems clear that the members of the court-martial were of this same opinion.

*Id.* at 144.

"The variety of factors bearing upon the relative severity of a punitive discharge and other punishments has tended to discourage the establishment of a fixed table of substitutions." *United States v. Darusin*, 43 C.M.R. 194, 196 (C.M.A. 1971) (citation omitted). "There is no preexisting formula for determining an appropriate substitution. In fact, appellate courts have discouraged a fixed table of substitution of punishments, recommending an individual evaluation of each case." *United States v. Carter*, 42 M.J. 745, 747 (A.F. Ct. Crim. App. 1995) (first citing *Hodges*, 22 M.J. at 262; and then citing *Darusin*, 43 C.M.R. at 196).

In *Carter,* our superior court notes that trial defense counsel argued at trial that "a punitive discharge was not a fair sentence" as the appellant would not be able to retire after his 24 years on active duty. 45 M.J. at 169.

> However, the military judge disagreed and adjudged a [bad-conduct discharge] in addition to 12 months [of] confinement. In clemency, both appellant and trial defense counsel asked that the [bad-conduct discharge] be commuted to an additional, unspecified period of confinement. The convening authority commuted the [bad-conduct discharge] to 24 months [of] additional confinement and 35 months [of] additional forfeiture.

*Id.* The CAAF rejected "appellant's argument that 2 years' additional confinement as a matter of law is an unlawful substitute punishment for a bad-conduct discharge." *Id.* at 170.

"An accused who has heavy and immediate family responsibilities may suffer far more from any period of confinement than from a bad-conduct discharge. A multitude of other circumstances could enhance the actual severity of either confinement or discharge in a particular case." *United States v. Holland*, 19 M.J. 883, 885 (A.C.M.R. 1985) (citing *United States v. Weatherford*, 42 C.M.R. 26 (C.M.A. 1970)). The court in *Holland* emphasized the need for "latitude for evaluating the actual severity of confinement as compared with a bad-conduct discharge when applied to a particular accused in light of his unique character, propensities and circumstances." *Id.*; *see also* R.C.M. 1002(f)(1) (during sentencing, the court-martial should consider, *inter alia*, "the history and characteristics of the accused").

Our predecessor court in *Turner* favorably cited *United States v. Kelly*, 17 C.M.R. 259 (C.M.A. 1954), a case where the appellant's original sentence at a special court-martial consisted only of a bad-conduct discharge. 34 M.J. at 1125–26. In *Kelly*, at the rehearing the court members were instructed that the sentence was limited to "no more than a bad[-]conduct discharge, since it cannot change the nature of the sentence" and it was "limited to a bad[-]conduct discharge or nothing." 17 C.M.R. at 261. The CMA disagreed, addressing the issue of

> whether there are legal punishments less severe than a bad-conduct discharge which can be adjudged by a court-martial on a rehearing. . . . [T]he Uniform Code does not limit the court to the imposition of such punishment as is necessarily included within the original sentence; it requires only that the sentence adjudged on rehearing be not more severe than, or in excess of, that originally imposed. The Manual patently provides such lesser punishments.

*Id.* at 262–63.

**3. Analysis**

Appellant postulates that "'[i]n excess of' is [ ] a *quantitative* analysis, while 'more severe' is a *qualitative* analysis." He notes that courts have analyzed these phrases together, but avers that statutory construction requires they be analyzed separately. We decline to take this novel approach.

The CAAF has not stated that courts are required to give each part of the phrase "in excess of or more severe than" a separate and distinct meaning and effect. In *Altier*, the CAAF recognized its

> cases regarding Article 63[, UCMJ,] reflect both the obligation to give meaning and effect to the statutory limitation against a sentence that is 'in excess of or more severe' than the original sentence, and an understanding that the application of the Article 63[, UCMJ,] limitation in any case cannot be reduced to a specific formula.

71 M.J. at 428 (citations omitted). As indicated *supra*, caselaw provides multiple examples where a term of confinement in place of a punitive discharge was found to be proper and not in excess of or more severe than the original punishment.

Appellant argues that it is "impossible to determine whether nine months of confinement is 'in excess of' a dismissal" because of the lack of fixed equivalents. He asserts, therefore, that we must limit our analysis "to those punishments capable of comparison." Thus, Appellant asserts "nine months of confinement is in excess of zero months of confinement." We are not persuaded. Appellant relies on *Mitchell*, 58 M.J. at 448, where the CAAF could not "make a meaningful comparison, objectively or otherwise" between the original sentence of a bad-conduct discharge, ten years' confinement, total forfeitures, and reduction to the grade of E-1, and the rehearing sentence of a dishonorable discharge, six years' confinement, and reduction to the grade of E-1. However, the CAAF held "that for the purposes of Article 63, [UCMJ,] a dishonorable discharge is more severe than a bad-conduct discharge." *Id.* at 449.

We find the meaning of "in excess of or more severe than" is not limited to a direct comparison of sentence components, but also applies to the sentence as a whole. *See Kelly*, 17 C.M.R. at 261–63; *see also Mitchell*, 58 M.J. at 449 (Crawford, C.J., concurring in the result) ("Article 63[, UCMJ,] and R.C.M. 810(d) speak in terms of rehearing 'sentences' that cannot be more severe than original 'sentences,' and the term 'sentence' is generally understood to mean the collective individual punishments meted out at courts-martial."). While nine months' confinement exceeds zero months' confinement, a sentence to nine months' confinement, total forfeitures, and a reprimand is not per se "in excess of or more severe than" a dismissal.

Finally, Appellant interprets *Altier* to hold that only a punishment akin to nonjudicial punishment can be considered less severe than a punitive discharge. We find no merit to this argument. *See In re Washington*, unpub. op. at *9 (explaining its view that petitioner (Appellant in this case) misstated the CAAF's holding in *Altier*).

Whether a sentence is "in excess of or more severe than" the original sentence is case-dependent. An accused's personal circumstances or subjective viewpoint may make a particular sentence seem more severe to that accused, but less severe to a different accused.

In this case, Appellant's viewpoint, as conveyed by his own unsworn statement and his civilian trial defense counsel's argument to the court members, is different than what Appellant indicated in clemency and on appeal. In presentencing, Appellant chose words that conveyed he did not want the effects of a punitive discharge to dampen his future opportunities. His counsel used more direct words, reminding the members of Appellant's unsworn statement, and fervently arguing against a dismissal as "far too severe [a punishment] for the misconduct in the charges." Overall, the Defense conveyed to the sentencing authority that some term of confinement, forfeitures of pay, and a reprimand would be less severe to Appellant than a dismissal. If we presumed the Defense was sincere in their statements to the court-martial, this could be an indication that, to Appellant at the time of the rehearing, the sentence imposed was not "in excess of or more severe than the original sentence."

However, Appellant's request for clemency and his declaration to this court suggests otherwise. Appellant told the convening authority his sentence was "excessive and severe" and argued against continued confinement. Appellant did not tell the convening authority what he told this court: that he "would 100[ percent] have preferred a dismissal for [his] sentence than what the members adjudged at the rehearing."

The question we must answer is which viewpoint do we accept? For this issue, we consider all matters in the record, but give more weight to what was presented to the members during Appellant's sentence rehearing, followed by what Appellant provided to the convening authority. We provide greater weight to Appellant's post hoc declaration when we consider Appellant's claim of ineffective assistance of counsel relating to what sentence could be adjudged or approved. *See* Section I.G, *infra*. As Judge Sullivan wrote in *Carter*, "This case and its outcome can be summarized by the old adage, 'Watch what you ask for, you may get it.'" 45 M.J. at 168 (footnote omitted). We find the sentence adjudged at Appellant's rehearing and approved by the convening authority does not contravene Article 63, UCMJ.

**F. Staff Judge Advocate Advice on the Sentence**

Appellant contends the SJA "misadvised" the convening authority in that the SJA claimed the convening authority "did not have the authority to protect Appellant from a more severe sentence by reducing the sentence." Appellant's contention is centered on the application of Articles 63 and 60, UCMJ (2016 *MCM*).[15] Appellant's requested relief is remand to the convening authority to evaluate whether the sentence upon rehearing is in excess of or more severe than the original.

**1. Additional Background**

Through his military trial defense counsel, Appellant submitted matters in clemency on 28 September 2022. His primary contentions were that Article 63, UCMJ, legally prohibits the convening authority from approving the sentence upon rehearing, and that sentence was excessively severe. He argued,

> For the original seven convictions, [Appellant] was sentenced only to a dismissal—meaning that the court-martial found that his conduct was not worthy of any confinement, forfeitures, or a reprimand. Treating these "other punishment[s]" separate from that of a punitive discharge, it is clear that nine months of confinement and total forfeitures are an escalation of, and in excess of, the sentence which [Appellant] received during his original sentencing [ ]hearing especially when considering he was being sentenced for less than a third of the original convictions.

One of the matters submitted in clemency was a memo from Appellant titled "Request for Relief Under [R.C.M.] 810(d)." In that memo, Appellant referenced that after he was brought back to duty leading up to the sentence rehearing, he was not being paid. He asked the convening authority: "[P]lease [do] not approve my sentence, or at a minimum only approve that portion which is not in excess or more severe than my previous sentence, so that I may concentrate on exiting the military as quickly as possible." He explained why he did not want confinement or forfeitures of pay:

> [W]ith my current sentence I will receive no pay for nine months, causing significant hardship and burden on me and my family. My time spent in confinement will severely impact my rehabilitative potential, potentially setting me back *years*, as it will remove me from employment in any form and prevent me from

---

[15] Appellant cites Article 66, UCMJ, and not Article 60, UCMJ, in his brief, which citation we understand to be erroneous; Article 66, UCMJ, speaks to review by Courts of Criminal Appeals and not action of the convening authority.

> continuing my education to better myself.

Appellant ended by "pleading that [the convening authority] prevent [him] from facing the remainder of this excessive and severe sentence." Appellant did not address the severity of a sentence to a dismissal.

The convening authority's SJA signed a staff judge advocate's recommendation (SJAR) on 10 January 2023. The SJAR stated the Defense raised two allegations of legal error: (1) "a sentence to confinement, total forfeitures, and a reprimand cannot be approved as this would be a more severe sentence and more than what [Appellant] received at his first trial;" and (2) "the severity of the punishment adjudged is excessive considering the nature of this case and [Appellant's] character." The SJA described Appellant's contention that the sentence at rehearing was in excess of or more severe than the original sentence. She detailed the military judge's ruling denying the Defense's post-trial motion, discussed *supra*, including caselaw upon which the military judge relied. She stated, "We concur with the military judge's analysis and ruling during the sentencing rehearing." The SJA also raised the Defense's contention that the convening authority could not approve a sentence that contravenes Article 63, UCMJ, but did not directly address it. Citing R.C.M. 1107(d)(1)(A) and (B), she stated:

> [Appellant] requests that you reduce his term of confinement. However, under the Rules for Courts-Martial that apply for this rehearing (2016 Edition), confinement for a period exceeding six months may not be disapproved, commuted, or suspended, in whole or in part, except upon trial counsel's recommendation for substantial assistance or pursuant to a valid plea agreement.

She continued, identifying the sentence imposed at rehearing and the maximum imposable sentence. She repeated that the convening authority did not have the authority to disapprove, commute, or suspend the adjudged confinement; however, she advised the convening authority that he did have that authority over the adjudged forfeitures and the reprimand. She ended by recommending he approve the confinement, forfeitures, and reprimand as adjudged.

Appellant's civilian defense counsel submitted a response to the SJAR on 13 January 2023. Citing Article 63, UCMJ, he stated, *inter alia*:

> You misadvise[d] the [c]onvening [a]uthority that he does not have the authority to disapprove, commute, or suspend, in whole or in part, the confinement. [Appellant] objects to this misstatement of law. The [c]onvening [a]uthority instead must protect [Appellant] from a sentence in excess of or more severe than the original. [The convening authority] must exercise his independent judgement [sic] to determine whether, in fact, the sentence

26

here violates Art[icle] 63, UCMJ. Contrary to your advice, [the convening authority] must disapprove any portion of the confinement which he finds to be a sentence more severe than or in excess of the original.

The Acting SJA signed an addendum to the SJAR on 31 January 2023. The addendum to the SJAR raised the Defense's objections to the SJAR. The Acting SJA stated, "I disagree that this was legal error. In my opinion, no corrective action is necessary, and the earlier recommendation remains unchanged. I recommend that you approve the findings and sentence as adjudged." Neither SJA memoranda advised the convening authority that whether a sentence upon rehearing is "in excess of or more severe than" the original sentence was a matter of law or a matter for his determination.

The aforementioned documents, among others, were provided to the convening authority, who approved the sentence upon rehearing on 31 January 2023.

**2. Law**

The proper completion of post-trial processing is a question of law the court reviews de novo. *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000). Where we find error with the advice to the convening authority in an SJAR, we provide relief if the appellant can demonstrate "some colorable showing of possible prejudice . . . in terms of how the [error] potentially affected an appellant's opportunity for clemency." *United States v. Zegarrundo*, 77 M.J. 612, 614 (A.F. Ct. Crim. App. 2018) (omission and alteration in original) (quoting *United States v. Scalo*, 60 M.J. 435, 436–37 (C.A.A.F. 2005)). "The colorable showing threshold is low, but the prejudice must bear a reasonable relationship to the error, and it must involve a reasonably available remedy." *United States v. Capers*, 62 M.J. 268, 270 (C.A.A.F. 2005) (citing *Scalo*, 60 M.J. at 437).

We resolve questions of "statutory interpretation and the sentencing jurisdiction of a rehearing . . . de novo." *United States v. Davis*, 63 M.J. 171, 173 (C.A.A.F. 2006) (citations omitted). "A convening authority's power to take action on an adjudged sentence is governed by Article 60, UCMJ, which we [ ] interpret de novo." *United States v. Robinson*, 78 M.J. 578, 581 (A.F. Ct. Crim. App. 2018) (citation omitted).

Article 63, UCMJ, reads, in part: "Upon a rehearing . . . no sentence in excess of or more severe than the original sentence may be approved." One exception is when "the sentence prescribed for the offense is mandatory." *Id.* Similarly, R.C.M. 810(d) provides that "offenses on which a rehearing . . . has been ordered shall not be the basis for an approved sentence in excess of or more

severe than the sentence ultimately approved by the convening or higher authority following the previous trial or hearing, unless the sentence prescribed for the offense is mandatory."

> [T]he authority of a rehearing to adjudge a sentence is limited only by the maximum authorized sentence for the offenses of which the accused has been found guilty or the jurisdictional maximum of the court-martial. At a rehearing, the sentencing body, whether members or military judge, should consider the evidence in aggravation, extenuation, and mitigation in light of the allowable maximum sentence for the findings of guilty and adjudge an appropriate sentence. The burden of protecting an accused against higher sentences rests with the convening authority at the time action is taken on an adjudged sentence from a rehearing.

*Davis*, 63 M.J. at 175 (footnote omitted).

Article 60(c)(2)(B), UCMJ, provides: "Except as provided in paragraph (4), the convening authority . . . may approve, disapprove, commute, or suspend the sentence of the court-martial in whole or in part." The referenced paragraph (4) states: "Except as provided in subparagraph (B) or (C),[16] the convening authority . . . may not disapprove, commute, or suspend in whole or in part an adjudged sentence of confinement for more than six months or a sentence of dismissal . . . ." Article 60(c)(4)(A), UCMJ. Similarly, R.C.M. 1107(d)(1)(A) states the "convening authority may disapprove, commute, or suspend, in whole or in part, any portion of an adjudged sentence not explicitly prohibited by this rule, to include reduction in pay grade, forfeitures of pay and allowances, fines, reprimands, restrictions, and hard labor without confinement," but may not so affect adjudged confinement for more than six months or a dismissal.

### 3. Analysis

The core of Appellant's argument is that the convening authority, not the SJA, makes the determination under Article 63, UCMJ, and R.C.M. 810(d) whether a sentence upon rehearing is "in excess of or more severe than" the original, approved sentence. He relies on the CAAF's language in *Davis*: "The burden of protecting an accused against higher sentences rests with the convening authority at the time action is taken on an adjudged sentence from a rehearing." 63 M.J. at 175. We need not here decide whether the convening

---

[16] Subparagraphs (B) and (C) address issues not presented here: recommendation of the trial counsel and pre-trial agreements.

authority's action on an adjudged sentence at rehearing is limited by Article 60, UCMJ.

The Government suggests we consider the totality of advice the SJA provided to the convening authority, in the SJA's initial recommendation and addendum, to include whether the sentence upon rehearing was in excess of or more severe than the original sentence, and not take sections out of context. The Government concedes "the SJA opined that there was no Article 63[, UCMJ,] issue that required action by the [convening authority]," but asserts her statement that confinement could not be disapproved related to R.C.M. 1107(d)(1)(A)–(B), not R.C.M. 801(d). Moreover, they assert, "Appellant's contention regarding Article 63[, UCMJ,] and whether his sentence was 'more severe' or 'in excess of' his original sentence was front and center before the [convening authority] when he took action on Appellant's case." To this point, they make several arguments, including noting the addendum to the SJAR told the convening authority he could take "some other action in this case" beyond their recommendation. We agree with the Government that the SJAR should be read as a whole. However, the advice relating to the convening authority's power to commute or otherwise affect a sentence to more than six months' confinement was not clearly separate from the advice relating to approval of a sentence upon rehearing.

Initially, both the SJA and Appellant's counsel framed the issue of what the convening authority could approve as a matter of law. The SJA, having concurred with the military judge's analysis, essentially advised the convening authority he was not required to disapprove the sentence upon rehearing as a matter of law. As discussed in Section I.E, *supra*, we agree Article 63, UCMJ, did not require the convening authority to disapprove Appellant's sentence to confinement. The SJA did not, however, state it was within the convening authority's discretion how to apply Article 63, UCMJ, to Appellant's sentence upon rehearing. Appellant's defense counsel objected to the SJAR, specifically stating the convening authority "must exercise his independent judgement [sic] to determine whether, in fact, the sentence here violates Art[icle] 63, UCMJ." Like the SJAR, the addendum to the SJAR did not comment on this issue specifically, but the Acting SJA stated that after considering Appellant's submissions, he disagreed with the "defense allegation of legal error regarding Art[icle] 63, UCMJ."

The SJA correctly advised the convening authority that he could disapprove the monetary forfeitures and the reprimand. For our analysis, we assume the SJA erred and advised the convening authority that he had no authority to disapprove the adjudged period of confinement, even to effectuate the rehearing-sentence limitation in Article 63, UCMJ, as he deemed appropriate. Thus,

the prejudice that bears "a reasonable relationship to the error" is the convening authority's approval of the sentence to confinement in line with that advice and against Appellant's post-trial wishes. *Capers*, 62 M.J. at 270.

The remedy Appellant seeks for this error is "new post-trial processing." However, we find the remedy we provide for issue (9) would be a more appropriate remedy here. That is, as we approve no term of confinement, gone is the possible prejudice that the convening authority might have reduced or disapproved the period of confinement but for the alleged error in the SJAR.

## G. Ineffective Assistance of Counsel

Appellant contends he "and his [trial] defense counsel prepared and executed his rehearing sentence case believing he *could not* receive confinement as a matter of law." He concludes that "[b]ut for this error, there is a reasonable probability that a properly prepared case would not have yielded a long period of confinement, or any confinement at all." He suggests we find deficient performance and prejudice, and set aside the sentence. We find deficient performance.

### 1. Additional Background

#### a. Maximum Punishment Inquiry

After the military judge announced his ruling on the maximum punishment for the offenses of which Appellant was convicted, he spoke to Appellant directly:

> [Military Judge (MJ)]: So, Lieutenant Washington, what that means, is that the maximum punishment for the offenses of which you stand convicted as just articulated, is forfeiture of all of your pay and allowances, confinement for 7 years and 6 months, and a dismissal. However, because this is a sentencing rehearing, the punishment for those offenses that the convening authority may actually approve as a result of this rehearing, cannot exceed the punishment that was approved by the convening authority at your original trial. Do you understand all of that?
>
> [Appellant]: Yes, sir.
>
> MJ: If you need a moment to consult with your counsel, please feel free to do so. And I will note that you ----
>
> [Defense counsel]: Can we have a moment, Your Honor?

MJ: You may.[17]

MJ: . . . So, just to go through this again, the maximum punishment for the offenses of which you stand convicted as determined by this court will be forfeiture of all pay and allowances, confinement for 7 years and 6 months, and a dismissal. However, because this is a sentencing rehearing, the punishment for those offenses the convening authority may approve, as a result of this rehearing, cannot exceed the punishment that was approved by the convening authority at your original trial. Do you understand that?

[Appellant]: Yes, sir.

MJ: Any question about that?

[Appellant]: No, sir.

### b. Appellant's Post-Trial and Appellate Rights Advisement

Two days before the sentence rehearing began, Appellant and his military trial defense counsel signed a 12-page "Post-Trial and Appellate Rights Advisement."[18] It stated, *inter alia*:

As you read though the following information, make note of any questions you have and we will discuss them prior to you signing this document.

. . . .

. . . **Deferment of Confinement**: Under R.C.M. 1102, if you are sentenced to any term of confinement, you will normally leave for confinement directly from the sentencing proceedings. However, you may ask the [c]onvening [a]uthority to defer your confinement. Like any other request for deferment, the [c]onvening [a]uthority is not obligated to grant your request, so you should be prepared to enter confinement immediately at the end of the trial. In fact, requests for deferment of confinement are rarely granted. When these requests are granted, it is typically under unusual circumstances such as funerals, births of children, or hospital visits—not for a failure to be packed or otherwise not being prepared to be away for a period of time.

---

[17] The verbatim transcript indicates Appellant then conferred with his military defense counsel and civilian defense counsel.

[18] Civilian defense counsel signed it two days later, on 12 September 2022.

. . . .

. . . If you are sentenced to confinement, it is illegal for you to be confined with an enemy prisoner.

. . . Under the Eighth Amendment of the United States Constitution[19] and Article 55, UCMJ, you have the right to be confined in a way that does not amount to cruel or unusual punishment.

. . . .

. . . **Limited Authority to take Action on Sentence**: For cases that were preferred prior to 1 January 2019, the [c]onvening [a]uthority must take action on the sentence but has limited options for sentence relief. The convening authority may commute, suspend, or disapprove, in whole or in part, an adjudged punishment EXCEPT that the convening authority may not commute, suspend, or disapprove, in whole or in part, an adjudged sentence of more than six months [of] confinement or a punitive discharge. Exceptions that may allow a convening authority to grant sentence relief on confinement in excess of six months or a punitive discharge are (1) plea agreements, (2) a written recommendation by the [m]ilitary [j]udge, and (3) substantial assistance to the [G]overnment in the investigation or prosecution of another person who has committed an offense.

Appearing above counsel's signature is a certification that counsel explained the rights to Appellant on 10 September 2022, and "fully counseled" Appellant concerning the rights and procedures. Above Appellant's signature is an acknowledgment that he has read and understands his post-trial and appellate rights as stated in the document.

As the court members deliberated on sentence, the military judge marked the post-trial rights advisement as Appellate Exhibit XXX. The military judge then ensured Appellant had a copy in front of him, and had the following colloquy with Appellant:

MJ: Looking at page 12 of the document, is that your signature?

[Appellant]: Yes sir, it is.

MJ: . . . Lieutenant Washington, did your defense counsel explain your post-trial and appellate rights to you?

---

19 U.S. CONST. amend. VIII.

[Appellant]: Yes sir, they did.

MJ : Do you have any questions about your post-trial and appellate rights?

[Appellant]: No, sir.

### c. Appellant's Post-Trial Article 39(a), UCMJ, Motion

Minutes after the military judge adjourned the court-martial, Appellant moved for relief. As summarized by the military judge:

> During the R.C.M. 802 conference, the defense counsel indicated that they were seeking, essentially, relief from the sentence imposed, basically, by virtue of a request for an order from this court that would limit the convening authority's ability to take action on the sentence that was adjudged at the sentence rehearing.

The military judge provided the parties time to research the issues. After hearing argument, the military judge ruled orally, stating, in part:

> The court denies the defense motion for appropriate relief. The relief requested, as just stated by the defense counsel, is to instruct the convening authority that he may not impose any confinement that was adjudged at this court-martial, or to approve any punishment in excess of what an Article 15[, UCMJ,] could be imposed upon an officer, particularly as it related to any limits of forfeitures.

> First, the Defense has not demonstrated that this court has the authority to instruct or order the convening authority to take particular action on the sentence imposed at this rehearing. And second, even if the court did have such authority, the Defense has not persuaded this court that the instruction that they are requesting is something that is legally required.

### d. Appellant's Request for Deferment

Also on 15 September 2022, Appellant's military defense counsel requested the convening authority defer Appellant's sentence to confinement. The request stated, in part:

> 2. On 15 September 2022, [Appellant] was sentenced to a reprimand, total forfeitures, and nine months of confinement. In the spirit of Article 63[, UCMJ,] and R.C.M. 810(d), the Defense is requesting relief in the form of deferment of confinement for 14 days because the sentence which was adjudged in this case is

arguably in excess of the sentence which was previously adjudged—which did not include any forfeitures or a sentence to confinement. There is some uncertainty in the law with regard to office[r] cases in which a punitive discharge is adjudged initially and then replaced by other sentences, such as confinement, at a subsequent hearing. Therefore, it is [Appellant's] position that immediate execution of a sentence to confinement would be unduly burdensome and would be improper at this stage as the convening authority has not been able to consider matters in clemency or impose action on sentence.

3. Additionally, [Appellant] has experienced extreme hardship by being brought suddenly onto active duty and returned to Malmstrom [Air Force Base (AFB)] after nearly two years on appellate leave. For approximately the first six months he was back on active duty, [Appellant] was not being paid, or was only being paid small advances, causing him to spend nearly all his savings just to survive. [Appellant] requires additional time to prepare to enter confinement, to allow his civilian defense counsel to seek relief at the appellate level, and to prepare a clemency request for convening authority review and action. [Appellant] has been at Malmstrom AFB since January 2022 without an[y] instances of misconduct or anything to indicate he would be a flight risk or danger to others. [*Appellant*] *has not been able to set his personal affairs in order and desperately needs more time to be able to do so, as well as to prepare to raise additional matters for the convening authority's consideration.* The deferment of his sentence to confinement would comport with the fair administration of the military justice system and would allow him to work with his defense counsel to prepare additional matters for the convening authority's consideration.

. . . .

6. In short, [Appellant] has already been sentenced, and the granting of this deferral would not in any way compromise or diminish the seriousness of that sentence. It would simply be a kind gesture that properly balances the needs of the Air Force with the needs of the Airman.

The convening authority denied Appellant's request for deferment of confinement on 21 September 2022.

### *e. Appellant's Writ Petition to this Court*

On 26 October 2022, through counsel Appellant filed a Petition for Extraordinary Relief in the Nature of a Writ of Habeas Corpus or in the Alternative, in the Nature of a Writ of Mandamus. He requested "immediate release from confinement" or "withholding from the [c]onvening [a]uthority the authority to approve a sentence to confinement greater than one hundred and twenty (120) days." Appellant did not file a declaration with his writ petition to explain his personal belief about the possibility of serving confinement after the sentence rehearing. This court denied Appellant's writ petition on 28 December 2022. *In re Washington*, unpub. op. at *11.

### *f. Waiver of Conflict*

On 23 March 2023, through his military and civilian appellate defense counsel, Appellant filed an assignments of error brief with this court; the Government filed an answer on 24 April 2023. On 2 May 2023, through only his military appellate defense counsel, Appellant filed a supplemental assignment of error along with a declaration from Appellant, dated 1 May 2023. The Government did not oppose, but noted a conflict: Appellant's supplemental assignment of error and declaration claimed ineffective assistance of his civilian trial defense counsel at the rehearing, Mr. RF, who also is Appellant's civilian appellate defense counsel. On 19 May 2023, Appellant, through both his appellate defense counsel, submitted a reply to the Government's answer brief. On 30 May 2023, this court issued an order for Appellant's counsel to show good cause why this court should consider any matter submitted on Appellant's behalf after Mr. RF became aware of Appellant's allegation that Mr. RF provided Appellant with ineffective assistance of counsel at the rehearing.

After first receiving a response from Mr. RF, then receiving a response from both Mr. RF and Major (Maj) MB, we issued another order on 14 July 2023, stating that counsel for Appellant failed to show good cause. We noted we had "reservations . . . that Appellant was given sufficient advice to make a knowing, voluntary, and intelligent waiver" of his right to conflict-free counsel. Our order stated, *inter alia*,

> Appellant may file a new Reply to the Government's answer to Appellant's assignments of error through conflict-free counsel. In the alternative, . . . Appellant may provide the court a sufficient waiver of conflicts with his current appellate counsel and request the court consider Appellant's Reply dated 19 May 2023 and more fully consider Appellant's Supplemental Assignment of Error, dated 2 May 2023.

We added, "To effectuate this order and upon Appellant's request, we strongly recommend The Judge Advocate General provide independent counsel

to Appellant for the limited purpose of providing advice and counsel about the conflict, as substitute counsel for Maj MB, or both." (Footnote omitted).

On 31 July 2023, through another appellate defense counsel, Maj DB, Appellant filed a motion to attach a one-page declaration entitled "CONFLICT WAIVER," dated 28 July 2023 and digitally signed by Appellant. We found the declaration was "sufficient" to address the conflict issue, and stated we "will fully consider" certain previous filings.

### g. Appellant's Declaration to this Court

In his declaration to this court dated 1 May 2023 in support of this assignment of error, regarding a sentence to confinement or dismissal, Appellant states, in part:

> I had extensive discussions with my counsel about the possible outcomes from the rehearing. To be clear, I was only ever told, in absolutely clear language, that I *could not* go to confinement. I was informed that the limitations under the UCMJ meant I could not receive a sentence in excess of or more severe than my previous sentence. Because my previous sentence did not include confinement, the new sentence could not, either. I went into the rehearing with this knowledge and expectation that separation proceedings would be initiated upon the rehearing no matter the sentence. I was thoroughly not prepared for a possible confinement sentence so much so, that other officers (character witnesses) had to spend personal money to get my necessary items for confinement the night I was ordered to confinement. My Area Defense Counsel also took personal leave after the court-martial to stay at Malmstrom and assist in preparing Power of Attorney documents and to ensure I was set up for my stay in confinement.
>
> . . . .
>
> . . . Although I placed trust in my defense counsel on how to present the sentencing case, my input would have differed significantly if I knew confinement was a possibility. . . . I would 100[percent] have preferred a dismissal for my sentence than what the members adjudged at the rehearing. I would have fully supported my counsel if they argued for a dismissal and nothing else, which [wa]s actually the Government's recommendation in the case. I believe the members would have followed suit if both the Government and the Defense had the same recommendation. Not only was confinement adjudged, but so was forfeiture of all pay and allowances and a reprimand. None of which I was

sentenced to the last time.

. . . .

. . . While my counsel provided robust defense in this case, they failed to inform me about the possibility of confinement. I believe my case would have, and should have, played out differently if I had known.

In his declaration, Appellant does not address his Post-Trial and Appellate Rights Advisement colloquy with the military judge, which indicated he was advised he could be confined immediately upon the conclusion of the hearing. He also does not state whether he understood his counsel's argument to the members at the sentence rehearing to be for a sentence that he and his defense team believed could or would not be executed or approved.

On 22 August 2023, this court granted a Government motion to compel affidavits from Appellant's trial defense counsel, Captain (Capt) AZ and Mr. RF. We ordered each of them "to provide an affidavit or declaration to the court that is a specific and factual response to Appellant's claims that they were ineffective in that they prepared his rehearing sentencing case with the mistaken impression that confinement was not possible." In response, Capt AZ and Mr. RF each filed declarations with this court. Capt AZ stated, in his declaration dated 21 September 2023, "I have reviewed [Appellant's] declaration and concur with his factual assertions that Mr. [RF] and I prepared for his sentencing rehearing with the mistaken belief that a sentence to confinement was not a permissible punishment." In his declaration dated "22 September," Mr. RF stated, "I advised [Appellant] that the [c]onvening [a]uthority could not approve confinement at his sentence-only rehearing." Mr. RF did not state whether he told Appellant he could be confined pending the convening authority's decision on action disapproving adjudged confinement.

### 2. Law

The Sixth Amendment[20] guarantees an accused the right to effective assistance of counsel. *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). We review allegations of ineffective assistance de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009)). In assessing the effectiveness of counsel, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984). *See Gilley*, 56 M.J. at 124 (citation omitted).

---

[20] U.S. CONST. amend. VI.

The burden is on the appellant to demonstrate both deficient performance and prejudice. *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (citation omitted). "In determining whether an attorney's conduct was deficient we do not simply ask whether the attorney did everything possible that posed little or no risk to the client." *United States v. Palacios Cueto*, 82 M.J. 323, 329 (C.A.A.F. 2002). "[C]ourts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Datavs*, 71 M.J. at 424 (quoting *Strickland*, 466 U.S. at 689) (additional citation omitted). We consider the following questions to determine whether the presumption of competence has been overcome: (1) is there a reasonable explanation for counsel's actions; (2) did defense counsel's level of advocacy fall measurably below the performance ordinarily expected of fallible lawyers; and (3) if defense counsel were ineffective, is there a reasonable probability that, absent the errors, there would have been a different result. *See United States v. Palik*, 84 M.J. 284, 289 (C.A.A.F. 2024) (citing *Gooch*, 69 M.J. at 362); *see also United States v. Akbar*, 74 M.J. 364, 386 (C.A.A.F. 2015) (applying same standard for defense counsel's performance during sentencing proceedings). When considering the last question, "some conceivable effect on the outcome" is not enough; instead, an appellant must show a "probability sufficient to undermine confidence in the outcome." *Datavs*, 71 M.J. at 424 (internal quotation marks and citations omitted). Prejudice can result from counsel's sentencing argument flowing from the "faulty advice and strategy of his trial defense counsel." *United States v. Davis*, 60 M.J. 469, 475 (C.A.A.F. 2005).

"[O]ur scrutiny of a trial defense counsel's performance is 'highly deferential,' and we make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate conduct from counsel's perspective at the time.'" *Akbar*, 74 M.J. at 379 (omission in original) (quoting *Strickland*, 466 U.S. at 689). The burden is on the appellant to identify specific unreasonable errors made by his or her defense counsel. *United States v. Brownfield*, 52 M.J. 40, 42 (C.A.A.F. 1999) (citing *Strickland*, 466 U.S. at 689). We will not second-guess reasonable strategic or tactical decisions by trial defense counsel. *Mazza*, 67 M.J. at 475 (citation omitted). "Defense counsel do not perform deficiently when they make a strategic decision to accept a risk or forego a potential benefit, where it is objectively reasonable to do so." *Datavs*, 71 M.J. at 424 (citations omitted). Counsel's advice to an accused, or counsel's "strategic" or "tactical" decision that is unreasonable, or based on inadequate investigation, can provide the foundation for a finding of ineffective assistance. *See Davis*, 60 M.J. at 474–75.

"To be an effective advocate, trial defense counsel is required to discuss with an accused the various components of a military sentence, *i.e.*, confinement, discharge, reduction in rank, and forfeitures, and after such counseling

and in accordance with his client's wishes, zealously represent his or her client." *United States v. Burt*, 56 M.J. 261, 264 (C.A.A.F. 2002) (citing *United States v. Pineda*, 54 M.J. 298 (C.A.A.F. 2001)) (additional citation omitted).

"In dealing with post-trial, extra-record assertions of fact such as those in [the appellant's] declaration, we look to the principles of *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997), to determine whether we can resolve the issue without further factfinding proceedings." *United States v. Crawford*, 62 M.J. 411, 414 (C.A.A.F. 2006) (considering claims relating to conditions of pretrial confinement). A claim may be rejected "if the facts alleged in the affidavit allege an error that would not result in relief even if any factual dispute were resolved in appellant's favor." *Ginn*, 47 M.J. at 248. Similarly, "if the affidavit is factually adequate on its face but the appellate filings and the record as a whole 'compellingly demonstrate' the improbability of those facts, the Court may discount those factual assertions and decide the legal issue." *Id.* However,

> if the affidavit is factually adequate on its face to state a claim of legal error and the Government either does not contest the relevant facts or offers an affidavit that expressly agrees with those facts, the court can proceed to decide the legal issue on the basis of those uncontroverted facts.

*Id.*

### 3. Analysis

At the outset, we conclude we can consider this issue without ordering a fact-finding hearing. Here, Appellant's declaration "is factually adequate on its face to state a claim of legal error." *Id.* Additionally, trial defense counsel's declarations do not contest Appellant's factual claims, and where their declarations are not fully responsive to Appellant's factual claims, we resolve those claimed facts in Appellant's favor. *See id.*

In his brief, Appellant claims the error is his defense counsel provided ineffective assistance by preparing a sentencing case under the mistaken impression that confinement was not possible. Appellant personally states, "While my counsel provided robust defense in this case, they failed to inform me about the possibility of confinement." In his brief before this court, Appellant asserts that "[b]ecause his counsel believed confinement was impossible, they never inquired of [Appellant] whether he would prefer for his counsel [to] argue for confinement or a dismissal."[21]

---

[21] In his supplemental brief, Appellant also states, "Nor were there any negotiations with the convening authority about taking confinement off the table for the sentence

We agree with the Government's assertion that Appellant's trial defense counsel have been consistent in their claims that the law regarding Article 63, UCMJ, is unsettled. Trial defense counsel repeatedly have made reasonable arguments that the law would prohibit the convening authority from approving a sentence to confinement. Appellant's trial defense counsel erred, however, when they behaved as if the law guaranteed this outcome.

Thus, we analyze two related claims of trial defense counsel's effective representation of Appellant: a failure to appreciate and communicate to Appellant the uncertainty in the law concerning whether Appellant could spend any time in confinement; and requesting the members impose a sentence, to include confinement, that Appellant believed was more severe than a dismissal.[22] We start by considering several salient facts:

- Appellant's counsel informed him of the possibility of confinement when they advised him orally and in writing of his post-trial and appellate rights.
- Appellant told the military judge he had no questions about his post-trial and appellate rights, which included the possibility of confinement.
- Appellant told the members that their decision on sentence "may have lifelong effects" on him. He asked the members to "not allow the charges from this one night of unprofessional behavior to ruin [his] life forever," and, knowing his Air Force career is over regardless of their decision, asked the members to "give [him] a chance to become a contributing member of society."
- Civilian defense counsel argued to the members that a dismissal was "far too severe for the misconduct in the charges."
- Civilian defense counsel argued to the members that a reprimand is "absolutely appropriate."
- Civilian defense counsel argued to the members that some forfeiture of pay "is an appropriate punishment."
- Civilian defense counsel argued to the members that "a short[ ]term to confinement . . . is appropriate."

---

rehearing." This assertion is not supported by Appellant's declaration; we do not consider it.

[22] Presumably based on our limited order, Mr. RF's declaration to this court does not address why he argued for a dismissal, nor state that he sought Appellant's inputs on arguing for or against any particular sentence component. Similarly, Appellant does not claim he told his counsel whether to argue for a dismissal or told them his belief about the relative severity of a sentence to a dismissal or confinement.

- Appellant was present when civilian defense counsel argued to the members on sentence.
- Appellant declared under penalty of perjury: "To be clear, I was only ever told, in absolutely clear language, that I *could not* go to confinement;" "[b]ecause my previous sentence did not include confinement, the new sentence could not, either;" and "[w]hile my counsel provided robust defense in this case, they failed to inform me about the possibility of confinement."
- Appellant's military trial defense counsel declared under penalty of perjury: "I have reviewed [Appellant's] declaration and concur with his factual assertions that Mr. [RF] and I prepared for his sentencing rehearing with the *mistaken belief* that a sentence to confinement was not a permissible punishment." (Emphasis added).
- Appellant's civilian trial defense counsel declared under penalty of perjury: "I advised [Appellant] that the [c]onvening [a]uthority could not approve confinement at his sentence-only re-hearing."

Our first consideration is whether we find a reasonable explanation for counsel's actions. Mr. RF declared he told Appellant that the convening authority could not *approve* a sentence to confinement; he did not declare whether he told Appellant he would *serve* no time in confinement, not even until a deferment request was granted. Capt AZ declared he and Mr. RF had "the mistaken belief that a sentence to confinement was not a permissible punishment," which we understand to mean they thought the court-martial could not *adjudge* a sentence to confinement upon rehearing. Considering all the facts relating to this matter, including the declarations of counsel and Appellant and even the post-trial rights advisement, we conclude Appellant's trial defense counsel led Appellant to believe he would not set foot into confinement. We find no reasonable explanation for this advice. Mr. RF may have sought to effect a sentence that did not include a dismissal—through his argument—and ultimately would not include confinement—through the limitations on the convening authority following a sentence rehearing—thereby getting the best of both worlds. Employing gamesmanship is risky, and can result in an unreasonable strategy when counsel fail to appreciate and consider the risks. Here, trial defense counsel failed to tell Appellant the risk of immediate, if not lengthy, confinement.

As to their understanding of the law, Mr. RF declared he "disagree[s] with the premise, then and now, that in the case of an officer, *Altier* permits the substitution of confinement for a dismissal . . . ." Capt AZ, however, admits they held a "mistaken," not different-but-reasonable, understanding of the law. As discussed in Section I.E, *supra*, trial defense counsel should have recognized

the uncertain nature of the law and resulting unpredictability of the adjudication and approval of a sentence to confinement. Their counsel to Appellant amounted to a guarantee of no confinement, not measured advice.

Appellant compares this case to *United States v. Scott*, 81 M.J. 79 (C.A.A.F. 2021), a comparison we find persuasive. The trial defense counsel in *Scott* "assessed, rightly or wrongly, that the [a]ppellant was not likely facing a dismissal for the charges" and therefore did not pursue mitigating evidence for sentencing. *Id.* at 84. The CAAF found "[t]rial defense counsel failed to appreciate the enormous and obvious risk that the court-martial would dismiss [the a]ppellant, and accordingly failed to take reasonable steps to address this possibility." *Id.* at 85. They concluded, "[T]rial defense counsel's assessment of the situation was unreasonable." *Id.* The CAAF continued: "On the issue of failing to take reasonable steps to address the risk of a dismissal, we view the situation as follows. Having failed to appreciate the probability of dismissal, trial defense counsel prepared as if a dismissal was not on the table." *Id.* at 85–86. In the instant case, trial defense counsel failed to appreciate the possibility and probability of confinement being adjudged, executed, and approved, and prepared as if confinement "was not on the table." Like the CAAF in *Scott*, we find trial defense counsel's performance deficient in this respect. Trial defense counsel's level of advocacy fell "measurably below the performance ordinarily expected of fallible lawyers." *Palik*, 84 M.J. at 289.

Regarding the sentence for which Mr. RF argued, we struggle to find a reasonable explanation in the record. It appears trial defense counsel did not fully advise Appellant on the possibility, no matter how remote, that he could serve at least a portion of a sentence to confinement.[23] We acknowledge that argument generally is within the purview of the counsel, not the client. "[D]efense counsel is not the alter ego of the accused. There are occasions when he, not the accused, must determine his course of conduct, without impairing his obligation to represent the accused." *Weatherford*, 42 C.M.R. at 27. However, we think seeking to determine what sentence components are most and least palatable to an accused is fundamental to effective representation of that accused at a hearing on sentence. *See Burt*, 56 M.J. at 264.

We are mindful of several factors that weigh in favor of finding no error. Appellant's trial defense counsel advised him orally and in writing that he could go to jail immediately after the sentence rehearing adjourned, and the military judge ascertained that Appellant had no questions. The military judge advised Appellant that the members could adjudge confinement, then advised

---

[23] We need not speculate about whether trial defense counsel did not seek Appellant's preferences about specific sentence components, or knew his preferences but was overly confident about a no-confinement outcome.

him that "the punishment for those offenses the convening authority may approve, as a result of this rehearing, cannot exceed the punishment that was approved by the convening authority at [Appellant's] original trial." After consulting with his trial defense counsel, Appellant indicated he understood and stated he had no questions.[24] Appellant asked for a sentence that did not "ruin [his] life forever." Appellant gave no indication to the military judge that he understood that, although his counsel argued for a possible sentence to confinement, he could not serve any time in confinement. But, as Appellant stated in his declaration to this court, he "placed his trust in [his] defense counsel on how to present the sentencing case." Thus, even if Appellant knew his counsel thought they could reach a result that included no confinement and no dismissal, that knowledge would not cure their error—their "mistaken belief"—that Appellant would serve no time in confinement by operation of Article 63, UCMJ.

We now consider whether there is "a reasonable probability that, absent the [trial defense counsel's] errors, there would have been a different result." *Palik*, 84 M.J. at 289 (internal quotation marks and citation omitted). For purposes of this analysis, we accept Appellant's contention that the different result would have been to his benefit. Appellant declared his "input [to his defense counsel] would have differed significantly if [he] knew confinement was a possibility," he "would 100[ percent] have preferred a dismissal for [his] sentence than what the members adjudged at the rehearing," and he "would have fully supported [his] counsel if they argued for a dismissal and nothing else, which [wa]s actually the Government's recommendation in the case." Appellant does not directly state that his unsworn statement would have changed, but his unsworn statement at the rehearing implied that the only type of punishment that concerned him was a dismissal, whereas in his 1 May 2023 sworn declaration submitted to this court only confinement and monetary forfeiture of pay concerned him.

We find Appellant has met his burden to demonstrate prejudice. In this case, while the introduction of evidence or testimony apparently would not

---

[24] We see a significant difference between this case—where the military judge made a broad statement that the punishment the convening authority could approve cannot exceed the punishment approved at Appellant's original trial—and cases where the military judge specifically informed an accused that he could not be sentenced to or serve a particular sentence component. *See*, *e.g.*, *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999) (after assuming defense counsel was deficient for promising the appellant probation, the court found no prejudice where the judge specifically told the appellant that the offense was "not a probationable offense" and that he was "not going to receive probation under any circumstances," and the appellant replied he understood).

have been different but for counsel's deficient performance, the wording of Appellant's unsworn statement may have been, and the argument of trial defense counsel would have been, substantively different. We see a significant probability that had trial defense counsel argued against confinement and for a dismissal, especially as it harmonized with trial counsel's argument, the members would have adjudged no confinement as part of their sentence. *Cf. Davis*, 60 M.J. at 475 ("[f]ollowing counsel's argument that the members should maximize [the appellant's] period of confinement to preserve the possibility of his retirement, the members did just that[, adjudging confinement for life]" and "with the Government arguing for a sentence of forty years of confinement and a dismissal, there is a reasonable probability that there would have been a different result"). We find Appellant was "prejudiced by the faulty advice and strategy of his trial defense counsel." *Id.* We are not convinced beyond a reasonable doubt that the error was harmless.

### 4. Relief

Finding ineffective representation at the sentence rehearing, we consider remedy. Appellant requests we set aside his sentence; he does not state whether he supports a rehearing on sentence based on this assignment of error.

#### *a. Law*

We have broad discretion first to decide whether to reassess a sentence, and then to arrive at a reassessed sentence. *See United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). When "evidence in extenuation and mitigation is entirely before the court but counsel has been inadequate in some other way during the sentencing process" we "may be quite able to reassess the sentence without a remand." *United States v. Boone*, 49 M.J. 187, 198 (C.A.A.F. 1998).

In *Boone*, the CAAF addressed a scenario where trial defense counsel were found to have provided ineffective assistance of counsel "when they failed to present" favorable testimony during sentencing. *Id.* at 197. The CAAF considered "how constitutionally ineffective assistance of counsel at sentencing, once discovered, can be remedied." *Id.* at 196. In analyzing whether the lower court erred in reassessing the sentence instead of setting it aside and authorizing a rehearing, the CAAF stated:

> The record simply does not contain the evidence that the misfeasance of counsel caused to be omitted from the record. Therefore, there is no record from which the [CCA], acting within its vast but circumscribed powers under Article 66(c), [UCMJ,] can determine the sentence that the court-martial would have imposed.

*Id.* at 197–98.

In deciding whether to reassess a sentence or return a case for a rehearing, we consider the totality of the circumstances, which can include the following factors: (1) "[d]ramatic changes in the penalty landscape and exposure;" (2) whether the appellant was sentenced by court members or a military judge; (3) "[w]hether the nature of the remaining offenses capture[s] the gravamen of criminal conduct included within the original offenses and . . . whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses;" and (4) "[w]hether the remaining offenses are of the type that judges of the [CCAs] should have the experience and familiarity with to reliably determine what sentence would have been imposed at trial." *Winckelmann*, 73 M.J. at 15–16 (citations omitted). We may only reassess a sentence if we "confidently can discern the extent of the error's effect on the sentencing authority's decision." *United States v. King*, 50 M.J. 686, 688 (A.F. Ct. Crim. App. 1999) (en banc) (quoting *United States v. Reed*, 33 M.J. 98, 99 (C.M.A. 1991)).

When the appellant's case involved an initial court-martial and a rehearing, we "examine the proceeding that caused the error." *United States v. Williams*, __ M.J. __, No. 23-0006, 2024 CAAF LEXIS 257, at *12 (C.A.A.F. 9 May 2024).

> [I]f the court can determine to its satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error; and the demands of Article 59(a)[, UCMJ,] will be met. Of course, even within this limit, the [CCA] will determine that a sentence it proposes to affirm will be "appropriate," as required by Article 66(c)[, UCMJ]. In short, a reassessed sentence must be purged of prejudicial error and also must be "appropriate" for the offense involved.

*United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986); *see Boone*, 49 M.J. at 194–95. When we review a constitutional error, "the prejudice analysis considers whether the error was harmless beyond a reasonable doubt." *United States v. Tovarchavez*, 78 M.J. 458, 462 (C.A.A.F. 2019) (citation omitted); *cf. Palacios Cueto*, 82 M.J. at 336 (not applying the standard of harmlessness beyond a reasonable doubt after finding the error was not of a constitutional dimension).

To address an inappropriately severe sentence, a CCA may commute a punitive discharge to additional confinement. *See Hodges*, 22 M.J. at 264.

### b. Analysis

In the instant case, Appellant does not assert evidence in mitigation or extenuation would have been different. Thus, unlike in *Boone*, we have a complete record that allows us to reassess the sentence.

Our task in the instant case is to "affirm only . . . the sentence or such part or amount of the sentence" as we find "correct in law and fact" and determine, "on the basis of the entire record, should be approved." Article 66(c)(1), UCMJ. We cannot affirm a sentence that violates Article 63, UCMJ, as such a sentence would be incorrect in law. Article 63, UCMJ, mandates that "no sentence in excess of or more severe than the original sentence may be approved . . . ." We resolved against Appellant his claim that the sentence upon rehearing violated Article 63, UCMJ. We also resolved against Appellant his claim that confinement cannot be affirmed because nine months' confinement is "in excess of" zero months' confinement.

Multiple times in his brief, including on this issue, Appellant requests we set aside his sentence. He does not request another rehearing on sentence, nor does he argue against such a rehearing.[25] We have considered the totality of the circumstances, to include the *Winckelmann* factors, and have determined we can reliably reassess Appellant's sentence.

Under the circumstances of this case, we do not find that reassessing the sentence adjudged at Appellant's rehearing to now include a dismissal would be both less severe than his original sentence and appropriate for the offenses for which he was sentenced. We conclude beyond a reasonable doubt that disapproving the sentence to confinement and the reprimand, and approving less in monetary forfeitures, will cure the prejudice flowing from the ineffective assistance of counsel.

### c. Court-Martial Order

We now turn to an issue not raised by Appellant, but important to clarify—the court-martial order (CMO) is inaccurate and requires correction. The CMO states the "[s]entence [was] adjudged by [a] military judge, upon a rehearing, on 15 September 2022." This is incorrect in that Appellant was sentenced by officer members. Rather than remand the case, we direct the publication of a corrected CMO in our decretal paragraph pursuant to R.C.M. 1107(f)(2).

---

[25] In his brief on issue (3), Appellant states: "If this [c]ourt declines to give life to the phrase 'more severe' in Art[icle] 63, UCMJ, this honorable court should find, for the same reasons as above, that the sentence is inappropriate under Article 66, UCMJ[,] and re-assess it to reach the same result." Appellant does not clarify what "the same result" is, which could include setting aside the sentence in its entirety, or approving a shorter or no term of confinement.

## II. CONCLUSION

The court-martial order shall be corrected as follows: "adjudged by military judge" is modified by excepting "military judge" and substituting "officer members" therefor. The findings previously were affirmed. We reassess the sentence to forfeiture of $2,500.00 pay per month for six months. The approved sentence upon rehearing, as reassessed, is correct in law and fact, and no additional error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the sentence, as reassessed, is **AFFIRMED**.

JOHNSON, Chief Judge (concurring in part and in the judgment):

I generally concur with the opinion of the court, including the result, with one exception. I agree with my esteemed colleagues regarding their conclusion that the sentence adjudged at Appellant's rehearing was not "in excess of or more severe than" the sentence he originally received, in violation of Article 63, UCMJ, 10 U.S.C. § 863;[1] however, I do not fully agree with their rationale.

The opinion of the court aptly notes the disparity between what Appellant and trial defense counsel presented to the court members at the rehearing, what Appellant presented to the convening authority in his clemency submission, and what Appellant has presented on appeal through his declaration to this court. In effect, the Defense conveyed to the court members that adjudging a dismissal would be inappropriately severe, and that a sentence including a reprimand, some forfeiture of pay, and restriction or possibly a "short" term of confinement would be appropriate. As the Defense requested, the court members did not impose a dismissal, but instead adjudged a reprimand, forfeitures, and confinement for nine months. However, in his clemency matters Appellant described his adjudged sentence as "excessive and severe." In his declaration to this court, Appellant asserts he "would 100[ percent] have preferred a dismissal for [his] sentence than what the members adjudged at the rehearing."

The opinion of the court poses the question of which of these representations should be accepted as the more accurate indication of whether Appellant believed his original sentence to a dismissal alone or the sentence adjudged at the rehearing was more severe. My colleagues elect to give "more weight to what was presented to the members during Appellant's sentence rehearing"— that is, that a dismissal would be inappropriately severe, but a short term of confinement would not—evidently contributing to their conclusion the rehearing sentence did not violate Article 63, UCMJ. *United States v. Washington*,

---

[1] References to the UCMJ in this opinion are to the *Manual for Courts-Martial, United States* (2019 ed.).

No. ACM. 39761 (reh), slip. op. at *24 (A.F. Ct. Crim. App. 20 Aug. 2024) (unpub. op.). I cannot agree.

In my view, the Defense's presentation to the court members in this case was a very unreliable measure of Appellant's true beliefs regarding the relative severity of a dismissal and a term of confinement. As the opinion of the court describes in detail with respect to analyzing ineffective assistance of counsel, the Defense was laboring under the mistaken belief that because Appellant had been sentenced to dismissal alone at his original court-martial, any sentence to confinement adjudged at the rehearing could not be approved. Accordingly, as Appellant and trial defense counsel (incorrectly) understood the situation, in order to minimize Appellant's punishment their incentive was to concede confinement to avoid dismissal, in the belief that—unbeknownst to the court members—Appellant would thereby receive neither. The Defense's suggestion to the court members that a sentence to some confinement would be more appropriate than a dismissal must be understood in light of this strategy.[2]

Although I give little weight to the Defense's representations to the court members at the rehearing, I nevertheless reach the same result as my colleagues. Understanding that the severity of a particular punishment may depend to an extent on the individual's circumstances, in light of the longstanding precedent—as detailed in the opinion of the court—that a punitive discharge may be replaced with some months of confinement without unlawfully increasing a servicemember's punishment, and in light of the lifelong effects of a dismissal, I am not persuaded the sentence Appellant received at his rehearing was "in excess of or more severe than" the sentence he originally received, in violation of Article 63, UCMJ. However, I agree with my colleagues that Appellant has demonstrated he was prejudiced by ineffective assistance of counsel, and I concur in the reassessment of the sentence.



FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[2] I do not mean to suggest this was a laudable strategy or to encourage litigants to be disingenuous with the court-martial; I merely intend to view the record before us realistically.